

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX LLC d/b/a LIBERTY
TAX SERVICE,

             Plaintiff,
v.                                         CIVIL ACTION NO. 2:21cv135

PITCAIRN FRANCHISE
DEVELOPMENT, LLC,

             Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court are two motions: Petitioner JTH Tax LLC d/b/a Liberty Tax Service's ("Petitioner" or "Liberty") Motion to Confirm the Arbitration Award ("Motion to Confirm") and Respondent Pitcairn Franchise Development, LLC's ("Respondent" or "Pitcairn") Motion to Vacate the Arbitration Award ("Motion to Vacate"). ECF Nos. 3 and 14. Both the Motion to Confirm and the Motion to Vacate have been fully briefed before the Court. *See* ECF Nos. 4, 8, 12, 15, 17, 19. On July 1, 2021, the Court held a remote hearing on the parties' motions. ECF No. 21. Accordingly, this matter is ripe for judicial determination. For the reasons stated below, Petitioner's Motion to Confirm is **GRANTED** and Respondent's Motion to Vacate is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2021, Arbitrator Peter B. Kupelian issued a Final Arbitration Order, finding in favor of Petitioner on the parties' cross-motions for summary judgment. *See Final Arbitration Order*, ECF No. 1-3. Because the parties do not dispute the facts but merely disagree with the arbitrator's application of the facts, the Court adopts the factual and procedural background therein. Relevant facts from the Final Arbitration Order, in addition to subsequent procedural

developments, are restated below.

**A. Procedural Background**

On December 12, 2017, Pitcairn filed a motion for a temporary restraining order and preliminary injunction in the United States District Court for the Eastern District of Virginia. M. for Temp. Restraining Ord. and Prelim. Inj., *Pitcairn Franchise Development LLC v. JTH Tax, Inc.*, No. 2:17-cv-640 (E.D. Va. Dec. 12, 2017) (ECF No. 3). In that case, Pitcairn sought to enjoin Liberty from terminating a December 31, 2007 Area Development Agreement (the "2007 ADA") between Liberty and Peter Ziolkowski ("Ziolkowski"). The Court ordered that the ADA remain in effect but directed Pitcairn to apply to the American Arbitration Association ("AAA") for emergency relief. Case No. 2:17-cv-640, ECF No. 16.

Pitcairn later filed its initial demand with the AAA and sought a preliminary injunction to toll expiration of the 2007 ADA until there was a decision on the merits in the arbitration. *Final Arbitration Order*, ECF No. 1-3 at 2. The arbitrator granted the preliminary injunction on January 19, 2018. *Id.* Throughout arbitration, the parties continued negotiations and Pitcairn and Liberty continued to perform their 2007 ADA contractual obligations for over three years. *Id.*

On September 29, 2020, Pitcairn filed its Amended Demand in Arbitration (the "Amended Demand"). *Id.* The Amended Demand asserted two claims: (1) a claim for declaratory judgment that "[Pitcairn] is entitled to renew upon the same or similar terms as the Old Agreement, for a term of 10 years" and (2) a claim for "Failure to Pay Royalties On Ancillary Services." *Id.* In the Final Arbitration Order, the arbitrator denied relief for both claims. *Id.* at 15.

To enforce the Final Arbitration Order, Liberty filed the Petition for Confirmation of Arbitration and its Motion to Confirm on March 12, 2021. ECF Nos. 3 and 4. Respondent opposed

2

the Motion to Confirm on March 26, 2021, relying, in part, on an improper venue claim.[1] ECF No. 8. Petitioner replied on April 1, 2021. ECF No. 12. On May 4, 2021, Respondent separately filed its Motion to Vacate. ECF No. 14. Petitioner opposed the Motion to Vacate on May 18, 2021. ECF No. 17. Respondent replied on May 24, 2021. ECF No 19. On July 1, 2021, the Court held a virtual hearing on the parties' motions. ECF No. 21.

### B.     Relevant Provisions of the 2007 ADA

On approximately December 31, 2007, Ziolkowski and Liberty signed the 2007 ADA—a contract for the creation and maintenance of Liberty's tax return preparation franchises throughout the District of Columbia, Maryland, Virginia, and West Virginia. ECF No. 1-1. CEO John Hewitt executed the ADA on behalf of Liberty. *Id.* On August 25, 2014, Pitcairn, Ziolkowski (Pitcairn's managing member), and Liberty executed the Assignment and Amendment to Area Developer Agreements whereby the 2007 ADA was amended and assigned from Ziolkowski to Pitcairn, a Michigan limited liability company.[2] ECF No. 17-2.

The 2007 ADA lists a number of services Pitcairn would provide to Liberty Tax. ECF No. 1-1. These services include, but not limited to, a "Minimum Area Developer Performance" for development of Pitcairn's Franchise Territories. *Id.*; 2007 ADA§ 4.1, Sch. B. The provision states, "deletion is Liberty Tax's sole remedy for failure to meet Minimum Requirements." *Id.* In exchange for Pitcairn providing specified services, Liberty Tax agreed to pay Pitcairn 50% of Royalties franchisees in Pitcairn's territory paid

---

[1] The Court finds venue in the Eastern District of Virginia proper based upon determinations made by a District Court sitting in the Eastern District of Michigan wherein Pitcairn asserted an identical venue argument. *See* Ord. Granting Deft's M. to Tr. Venue, Pitcairn Franchise Development, LLC v. JTH Tax LLC, No. 2:21-cv-10550-SFC-KGA (E.D. Mich. May 25, 2021) (ECF No. 20). There, Pitcairn filed a request for temporary restraining order and preliminary injunction based upon the same facts adjudicated at arbitration and resolved in the Final Arbitration Order. *Id.* at ECF No. 1-1. On May 25, 2021, the Eastern District of Michigan transferred venue for that case to this Court.
[2] Therefore, for the sake of simplicity, the Court will refer to Pitcairn as a party to the ADA.

to Liberty Tax. *Id.* §3.3. The term of the 2007 ADA was ten years from the Effective Date of December 31, 2007. *Id.* §8.1.

Much of the parties' dispute spawns from the applicability of a renewal provision in the ADA. The renewal provision states:

> Upon completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. <u>If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement.</u> There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

*Id.* at § 8.2 (emphasis added). The arbitrator found that, "Pitcairn failed to provide written notice of its intent to renew" despite there being a 180-day notice requirement for renewal.

Section 4.1 of the ADA states as follows:

> 4.1 Minimum Requirements. ... If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purpose of this Agreement. **This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.**

4

*Id.* at § 4.1 (emphasis added).

Under the ADA's "Minimum Requirements" provision, Pitcairn was obligated to "provide Liberty with a minimum number of [franchise] Candidates each year that open Franchise Territories." *Id.* at § 4.1. Schedule B to the 2007 ADA provides that Pitcairn "must identify and secure" franchisee candidates to execute franchise agreements and operate Liberty franchises in 15 territories by April 30, 2017. ECF No. 1-1 at 17. As of December 13, 2017, Pitcairn had only developed 12 of the 15 required franchises, which was later increased to 13 Liberty franchises.

Moreover, the 2007 ADA contains an integration clause, which states:

> This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

*Id.* at § 9.12. The 2007 ADA also contains a non-waiver clause, which states:

> No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

*Id.* at § 9.13.

In the text of the 2007 ADA, the parties agreed that "Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." *Id.* at § 9.8(a). Pursuant to an addendum to the 2007 ADA, Pitcairn agreed "to bring any claim against [Liberty], including our present and former employees, agents, and affiliates, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association." *Maryland Addendum*; *Id.* at 20.

5

At some point in 2017, Liberty established a 2017 ADA which contained terms that materially differed from the 2007 ADA. *Final Arbitration Order*, ECF No. 1-3 at 6. Pitcairn received the 2017 ADA but never signed it. *Id.* According to the arbitrator, Pitcairn "[believed] that the terms of Liberty's then-current 2017 ADA were not advantageous to Pitcairn." *Id.* Accordingly, Pitcairn did not sign the 2017 ADA "because it understood that if it did so, it would be obligated to take the agreement Liberty had offered." *Id.*

### C. The Final Arbitration Order

Taking the above facts into consideration, the arbitrator reasoned that neither of Pitcairn's Arbitration Demand claims contained genuine issues of material fact and ruled in favor of Liberty. *Final Arbitration Order*, ECF No. 1-3.

Under Count I, Pitcairn sought declaratory judgment that Liberty renew the ADA on its original terms. The arbitrator held, however, that the renewal provision contained various conditions precedent required prior to any renewal. Those conditions included:

> "(1) written notice of intent to renew the ADA at least 180 days prior to the agreement's expiration, (2) [that the Area Developer] execute a general release in favor of Liberty Tax, (3) [that the parties] enter into 'a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement' and (4) [compliance] with the ADA's Minimum Requirements provisions. 2007 ADA § 8.2"

*Id.* at 9-10.

The arbitrator ultimately held that Pitcairn did not satisfy any of these conditions precedent. First, "Pitcairn concedes that the first written notice it gave of its intent to renew the ADA was by email on November 17, 2017," which was well within 180 days of the agreement's expiration on December 31, 2017. *Id.* at 10. Second, "Pitcairn concedes that it did not execute a generally release in favor of Liberty." *Id.* Third, Pitcairn did not enter into a new, 2017 ADA. *Id.* And fourth, "Pitcairn concedes that it did not meet the minimum development requirements" as Pitcairn only

established 12 or 13 Liberty franchises by the April 30, 2017 deadline. *Id.*

Despite failing to meet the conditions precedent, Pitcairn argued that the parties' conduct constituted waiver of strict compliance with the conditions precedent. *Id.* at 10. But the arbitrator found that Pitcairn did not meet the Virginia law standard for waiver. *Id.* In making this determination, the arbitrator relied upon the 2007 ADA's requirement that "no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party.... 2007 ADA § 9.13." *Id.* at 11.

The arbitrator notes that a Liberty employee by the name of Faith Leek may have verbally agreed to waiver. *Id.* at 11-12. Upon review of the filings, the arbitrator held, however, that even if such verbal waiver occurred, "Faith Leek did not have apparent authority to orally waive Respondent Liberty's rights." *Id.*

Alternatively, Pitcairn argued that Liberty participated in conduct that served as a legal hinderance to compliance with the notice requirement. *Id.* at 12. In response, the arbitrator found "Pitcairn has not offered any evidence to suggest that Liberty took action to keep Pitcairn from submitting its written notice." *Id.* Accordingly, the arbitrator held that Pitcairn did not meet its burden of establishing that it was legally hindered from compliance with the notice requirements.

The arbitrator furthered that even if Pitcairn met each of the conditions precedent, "the uncontroverted facts and law establish that Liberty is only required to offer the form of ADA currently offered by Liberty and that the form of the then-current ADA [the 2017 ADA] does not have to be on the same or similar terms as the 2007 ADA." *Final Arbitration Order*, ECF No. 1-3 at 15.

Turning to Count II, the arbitrator stated as follows:

"[t]he 2007 ADA specifies the revenue and sources of revenue to which Pitcairn is entitled. 2007 ADA § 3. Pitcairn has not offered any facts to genuinely dispute the

7

express language in the contract. Nevertheless, Pitcairn argues that it is entitled to both the specific bucket of revenue (Royalties on tax preparation services) and an additional bucket of revenue (Liberty's fee sharing with third-parties)."

*Id.* at 15. Ultimately the arbitrator held that "Pitcairn is not entitled to a portion of all of Liberty's revenue streams," thereby denying Count II as a matter of law. *Id.* at 16.

The arbitrator declined to consider parole evidence when assessing the merits of Pitcairn's claims, finding that the terms of the 2007 ADA were "clear and unambiguous." *Id.* at 14. As such, parole evidence was not taken into consideration since "'[i]t is universally accepted that parole or extrinsic evidence will be excluded when offered to add to, subtract from, vary or contradict the terms of a written contract.' *High Knob, Inc. v. Allen,* 205 Va. 503, 506, 138 S.E.2d 49 (1964)." *Id.*

## II. LEGAL STANDARD

Arbitration agreements are favored in federal courts, as are those awards stemming from such agreements. *Arrowhead Global Solutions, Inc. v. Datapath, Inc,* 166 F. App'x 39, 43 (4th Cir. Feb. 3, 2006) (unpublished per curiam). The powers of a federal court sitting to review an arbitration award are "severely circumscribed." *Wachovia Sec., LLC v. Brand,* 671 F.3d 472, 478 (4th Cir. 2012) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 (4th Cir. 1998)). Further, "[t]he analysis begins with the presumption that the Court should confirm the arbitration award." *Wichard v. Suggs,* No. 1:15 cv 003, 2015 U.S. Dist. LEXIS 36994, at *16 (E.D. Va. Mar. 24, 2015) (citing *Apex Plumbing,* 142 F.3d at 193). This sensible doctrine serves to further the purpose of arbitration, which is "the quick resolution of disputes and the avoidance of the expense and delay associated with litigation." *Apex Plumbing,* 142 F.3d at 193.

A party seeking to vacate an arbitration award "shoulders a heavy burden." *Patten v. Signator Ins. Agency, Inc.,* 441 F.3d 230, 234 (4th Cir. 2006) (quoting *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 149 (4th Cir. 1994)). "It is not enough… to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,* 130 S.Ct 1758,

1773, (2010). Instead, "the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010). A court's authority to review an arbitration award is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies, in part, to parties of any "contract evidencing a transaction involving commerce to settle by arbitration." 9 U.S.C. § 2. The FAA "is a congressional declaration of a liberal policy favoring arbitration." *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1370 (Fed. Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In reviewing an arbitration award, the court "sits to determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *Wachovia Sec., LLC v. Brand*, 671 F.3d at 478. That is, this Court has absolutely no jurisdiction to vacate the arbitration award simply because the Court may have reached a different conclusion on the presented facts. *Long John Silver's Restaurant v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (citing *United Paperworkers Inter. Union AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Pursuant to the FAA, a district court may vacate an arbitration award if the court finds: (1) fraud in procuring the award; (2) partiality on the part of the arbitrators; (3) gross misconduct by the arbitrators; or (4) failure of the arbitrators to render a mutual, final, and definite decision. *Id.* (citing 9 U.S.C. § 10 (1994)). The statute defines "gross misconduct" as, *inter alia*, "any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3) (1994). Further, in *Wilko v. Swan* the Supreme Court observed that an arbitration award may be vacated if it is in "manifest disregard" of the law. 346 U.S. 427, 436 (1953). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") notes that "manifest disregard continues to exist

9

either 'as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10.'" *Wachovia Sec., LLC*, 671 F.3d at 483. Moreover, the Fourth Circuit "adopted a two-part test that a party must meet in order for a reviewing court to vacate for manifest disregard: (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle." *Id.* (internal quotations omitted) (internal citations omitted).

### III. DISCUSSION

**A. Motion to Vacate**

In support of its Motion to Vacate, Pitcairn makes several arguments:

1. The arbitrator ignored applicable Michigan Franchise Investment Law ("MFIL").

2. The arbitrator disregarded Virginia law by concluding that the 180-day notice period was not waived by Liberty.

3. The arbitrator disregarded Virginia law by concluding that Pitcairn's failure to meet the minimum requirements constituted a failure to comply with a condition precedent to renewal.

4. The arbitrator erred in holding that Pitcairn was required to release its claims against Liberty.

5. The arbitrator erred in concluding that Pitcairn failed to comply with the condition precedent to sign a "new" agreement.

ECF No. 15. These arguments were renumbered and summarized based upon the substantive allegations within Pitcairn's Motion to Vacate. For ease of reference, the Court will refer to each of Pitcairn's arguments enumerated above as the "alleged errors" throughout the remainder of this analysis.

#### *1. First Alleged Error.*

Beginning with the first alleged error, Pitcairn claims that Michigan law under the MFIL

governs the parties' dispute, meaning the arbitrator mistakenly applied Virginia law. Since Pitcairn is a Michigan limited liability company, and therefore domiciled in Michigan, Pitcairn argues that its domesticity alone invokes the MFIL and that various provisions of the MFIL make several of the arbitrator's findings erroneous. *See generally* ECF No. 15. Pitcairn makes this argument despite the fact that not one of the 2007 ADA franchises was located in Michigan. Of note, applicability of the MFIL and the parties' arguments in support and opposition were adjudicated before a district court in the Eastern District of Michigan. *See* Ord. Granting Deft's M. to Tr. Venue, Pitcairn Franchise Development, LLC v. JTH Tax LLC, No. 2:21-cv-10550-SFC-KGA (E.D. Mich. May 25, 2021) (ECF No. 20). In its May 25, 2021 *Order Granting Defendant's Motion to Transfer Venue* (the "Michigan Order"), the Michigan Court held:

> "the statute is clear that there are three ways… that a franchise agreement is "made" in Michigan: (1) when an offer to sell is made in Michigan; (2) when an offer to buy is accepted in Michigan; and (3) when, if the franchisee is domiciled in Michigan, the franchised business is or will be operated in the state. Domicile in Michigan and operation of the franchised business in Michigan are not separate ways that a franchise is "made" in Michigan. Instead, one qualifies the other: both the franchisee's domicile in Michigan and operation of the franchised business in Michigan need to occur to trigger the third option in the MFIL. **Because there is no franchise that is operated in Michigan, Pitcairn's domicile in Michigan does not trigger application of the MFIL."**

*Id.* at 5 (emphasis added).

Upon review, the Court finds no meritorious reason to alter or re-evaluate the Eastern District of Michigan's findings. Therefore, the Court adopts its Michigan Order, finding the MFIL inapplicable to the 2007 ADA. Moreover, since the Court reviews an arbitrator's conduct for "whether the arbitrator did his job—not whether he did it well, correctly, or reasonably,"[3] it appears that the arbitrator "did his job" when he applied Virginia law as even the parties conceded to the

---

[3] *Wachovia Sec., LLC*, 671 F.3d at 478.

11

applicability of Virginia law throughout various court filings and arbitration pleadings. *See Motion for Temporary Restraining Order*, Case No. 2:17-cv-00640, ECF No. 4 at 16; *Preliminary Hearing and Scheduling Order*, ECF No. 17-3; *Motion for Summary Judgment*, ECF No. 17-5. Therefore, the first alleged error is unfounded.

### *2. Second Alleged Error.*

Regarding the second alleged error, Pitcairn makes two arguments in support of waiver. First Pitcairn alleges that both Faith Leek and Liberty CEO John Hewitt admittedly waived the 180-day notice period. Second, even if their conduct does not constitute an affirmative waiver, it should at least provide for estoppel based upon Ms. Leek's and Mr. Hewitt's course of performance. *See* ECF No. 15 at 18-21. Pitcairn asserts that the arbitrator had a "manifest disregard" for Virginia law on contract modification by course of performance or oral agreement. *Id.*

Pitcairn alleges that "[u]nder Virginia law, even if a contract contains a clause requiring all modifications to be in writing, the parties may, by oral agreement or course of performance, modify the terms of a contract." ECF No. 15 at 19. Pitcairn asserts that the evidence presented before the arbitrator demonstrated that affidavits from Mr. Ziolkowski (the managing member of Pitcairn), Mr. Hewitt (the then President of Liberty), and Faith Leek (Liberty's liaison to Pitcairn) all support claims that a modification had been given. In the Final Arbitration Order, the arbitrator does not discuss affidavits from Mr. Ziolkowski or Mr. Hewitt. Instead, he indicates that evidence of modification from Faith Leek was inadequate to support waiver because Faith leek lacked the apparent authority to make a modification. *See* ECF No. 1-3 at 11-12.

Moreover, Pitcairn asserts that the parties' course of performance also estops Liberty from enforcing the notice provision. ECF No. 15 at 20-21. Pitcairn alleges that Faith Leek assured

Pitcairn that renewal of the 2007 ADA would soon happen. "Ms. Leek told Ziolkowski that Liberty had changed the form of the AD Agreement... but she understood that Liberty was going [to] fix it by restoring the original form of the AD Agreement for renewals." *Id.* Additionally, Mr. Hewitt's sworn affidavit that he waived the 180-day notice requirement serves as evidence that Pitcairn relied upon statements from Mr. Hewitt in support of waiver, causing Pitcairn to delay submission of its notice. Ultimately, Pitcairn submitted notice of intent to renew in November 2017, after months of alleged back and forth with Ms. Leek and Mr. Hewitt. *Id.*

The Court finds that Pitcairn is merely requesting a *redo* in federal court. Admittedly, there are aspects of the arbitrator's analysis that this Court finds erroneous. In particular, Mr. Hewitt's sworn affidavit admitting that waiver occurred could have been direct evidence of waiver, warranting a different outcome. However, the Court cannot vacate an arbitration award just because the Court may have reached a different outcome. *See Long John Silver's Restaurant*, 514 F.3d at 349 ("'[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.'" (alteration in original) (citing *United Paperworkers Inter. Union AFL-CIO*, 484 U.S. at 38)). No manifest injustice took place because the arbitrator did acknowledge the applicable legal principle for waiver, *see* ECF No. 1-3 at 10[4], and applied some—though not all—of the facts to those principles, *see id.* at 11-12[5]. Therefore, the manifest injustice standard was satisfied, making the second alleged error of no consequence to the Court's review of the Final Arbitration Order.

---

[4] Here, the arbitrator cites to several Virginia law cases on waiver and their applicability.
[5] Here, the arbitrator evaluates Faith Leek's conduct and status within Liberty to assess whether she had authority to waive the 180-day requirement.

### *3. Third Alleged Error*

Turning to the third alleged error, Pitcairn argues that the Minimum Requirements discussed in the 2007 ADA were not conditions precedent to renewal. Pitcairn asserts that the plain language of Section 4.1 of the ADA states "deletion is Liberty's sole remedy for failure to meet Minimum Requirements." *2007 ADA*, ECF No. 1-1. Moreover, the Minimum Requirements were not referenced as conditions precedent to renewal in Section 8.2 of the 2007 ADA (the renewal provision). *See id.* at § 8.2. Accordingly, Pitcairn concludes, "[m]eeting the Minimum Requirements was not a condition precedent to renewal of the ADA any more than refusing to renew the ADA was the remedy available to Liberty Tax if Pitcairn did not meet the Minimum Requirements." ECF No. 15 at 23.

But Pitcairn faces the same challenges with this alleged error as those articulated in Section III.A.2. above. This too is an issue for which the Court may have decided differently but simply cannot award vacatur. The Court does not find that a manifest injustice occurred as the arbitrator applied the correct Virginia law to the contract, *see* ECF No. 1-3 at 9, and then analyzed the provisions he thought applicable, *see id.* at 9-10. Indeed, contract interpretation is almost always subject to varied analyses. This is the very reason many civil disputes are litigated. Pitcairn cannot obtain vacatur merely because it disagrees with the arbitrator's interpretation.

### *4. Fourth Alleged Error.*

The fourth alleged error asserts that Pitcairn did not fail to meet the release requirement since "no waiver has ever been provided to Pitcairn." ECF No. 15 at 23. Pitcairn argues that "[d]etermining that Pitcairn violated a condition precedent to renewal by not signing a waiver it was not even provided is bewilderingly illogical." *Id.* This is a factual challenge to the arbitrator's assessment of whether Pitcairn met the release requirement. Such factual challenges do not

constitute a manifest disregard for Virginia law. Therefore, Pitcairn's fourth alleged error does not warrant vacatur.

### 5. *Fifth Alleged Error*

Lastly, turning to the fifth alleged error, Pitcairn argues that it was never provided a final new agreement. In the Final Arbitration Order, the arbitrator held that Pitcairn did not enter into the 2017 ADA despite having been required to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. *See Final Arbitration Order*, ECF No. 1-3. Pitcairn acknowledges that it was provided a "preliminary document that differed in significant, material ways from the 2007 Agreement." ECF No. 15 at 24. However, Pitcairn asserts "it was never provided a new agreement" to sign since "the plain terms of the 2007 ADA provide that [] the 2007 Agreement will be renewed on the same terms." *Id.* In other words, because the 2017 ADA did not comport with the original terms of the 2007 ADA, Pitcairn was never provided a new agreement compliant with the 2007 ADA's renewal language.

Similar to the fourth alleged error, Pitcairn is arguing that because Liberty did not provide a new agreement substantially similar to the 2007 ADA, Pitcairn did not violate this condition precedent. This is yet another factual determination for which the Court cannot award vacatur. Moreover, Pitcairn does not reference any law that was manifestly disregarded in support of its theory for this alleged error. Therefore, the fifth alleged error also does not support vacatur.

### B. Motion to Confirm

Finding no meritorious reason to vacate the Final Arbitration Order, the Court now considers Petitioner's Motion to Confirm. In its Memorandum in Opposition, Pitcairn largely recants its arguments set forth in the Motion to Vacate. ECF No. 8. The only additional argument is that of improper venue, alleging that Liberty improperly filed its Petition in the Eastern District

of Virginia when it should have been filed in the Eastern District of Michigan pursuant to the MFIL. However, as indicated above and pursuant to the Michigan Order, the MFIL is inapplicable to Pitcairn's claims. Accordingly, the forum selection clause prevails and venue in the Eastern District of Virginia is proper.

Pursuant to the FAA, to prevail on a motion to confirm, petitioners must (1) petition the court within one year of the arbitration award; (2) provide notice to the adverse party; and (c) file the award order, the arbitration agreement, and any extension of time with the petition. *See* 9 U.S.C. §§ 9, 13. Here, Petitioner filed its Petition containing all required documents approximately five weeks after the Final Arbitration Order. ECF No. 1. Notice was also provided to Respondent. ECF No. 1-5. Therefore, "the court must grant [an arbitration award] order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Since the Court denies vacatur and because the parties presented no evidence of required modification or correction, the Court hereby **GRANTS** Petitioner's Motion to Confirm.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion to Confirm is **GRANTED** and Respondent's Motion to Vacate is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
July 27, 2021

Raymond A. Jackson
United States District Judge